The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The first case today is Kettler-Bosse v. New York Life Insurance Company et al. Appeal number 192240. Mr. Banks. Good morning, may it please the court. My name is Michael Banks and I am counsel for appellant New York Life Insurance Company. I'm not accustomed to doing these things sitting down so I beg the court to grant me two minutes of time for rebuttal. Yes, you may. Thank you. Your Honors, the question we have here is obviously one of arbitrability. Mr. Bosse and New York Life entered into a contract in which they agreed to submit any dispute claim or controversy between them to binding arbitration. There was no limitation on the subject matter of the kinds of claims that would be subject to compulsory arbitration nor was there any limitation on timing. In fact, the contract said explicitly that the arbitration agreement between the parties would survive the contract. The district court described that as unambiguous saying it is unambiguous that the arbitration obligation survives the termination of the contract and that of course is critical here because it was contemplated that Mr. Bosse might have different positions or relationships with New York Life and even after the particular contract ended, arbitration would survive into the future. The district court did not dispute that. The contract also had what is known as a delegation clause, a provision saying that questions of arbitrability must be decided by the arbitrator not by a court and it actually repeated that several times. It commanded that such decisions are to be made by the arbitrator and it incorporated what was known as a rules provision saying that either the rules of the NASD, the National Association of Securities Dealers which is now FINRA or the American Arbitration Association would apply. Let me ask you, I'm sorry I have to interrupt you because I have something that has been bothering me. Supposing that Mr. Bosse was hit by one of the company cars today, would that be subject to arbitration? Well it would go to the arbitrator to decide whether that's subject to arbitration. I would answer yes, of course it's not what we have. I don't think you could easily say the parties thought about a car accident when they were entering into the arbitration agreement. They did say any dispute. Is there any way to read the text to exclude the case that Judge Chiawea just asked? No, I don't believe so. I believe the parties agreed that we all include the case that we have before us. No. I'm sorry, Judge Barron, I think we had trouble hearing you. Yeah, I think we had trouble hearing you. You may want to repeat your question in full and we'll let you know if that happens again, but you seem to break up a little bit. Sorry to interrupt. Are you telling us that we have to read the provision to include Judge Chiawea's hypothetical or not to? I would say it would be read to include the hypothetical, namely if Mr. Bosset had been injured in a car accident caused by an agent of New York life, the language of his arbitration agreement would send the matter to an arbitrator to decide whether that was within the scope of the party's obligation. Mr. Banks, as you said a few minutes ago, no such dispute is in front of us and you in fact raised a question about whether the parties would have contemplated this agreement covering such a dispute. If I could go back to the question, Mr. Banks, have you finished answering my question? I have, Your Honor. Thank you. Okay. Okay. The language of the contractual agreement, and there's no dispute that the parties validly entered into a contractual agreement, they agree that any dispute, claim, or controversy arising between them, comma, including those alleging employment discrimination in violation of a statute, parentheses, herein after the claim, as well as any dispute as to whether such claim is valid. The agreement specifies the type of claim that it wants to be quite certain is understood to be within both provisions of the Arbitration Clause. And indeed, the majority of Mr. Bossie's claims here fit exactly into that alleging employment discrimination in violation of a statute. Those are his primary concerns. So, it strikes me that one could decide the case more narrowly on those grounds and not get into the hypothetical which Judge Torea just posed. It is a hypothetical that might cause the man on the street to wonder a little bit about what the initial partners' agreement had to do with a car accident many years later. I'm sorry, Judge Barron, did you have a question? I appreciate the point. I guess what I didn't quite get an answer to you from, Mr. Banks, was how could one read the contract, given its text, to exempt that claim on the ground that it wasn't contemplated, but to include the claim that is before us? I just am not following if there's a... It's true that maybe they didn't contemplate it, but the text just isn't susceptible of that distinction, is it? No, that's why my position would be, Your Honor, and New York Life's position, Your Honor, would be that the language... Since that's how I thought your argument went, what occurs to me then is what significance should we attribute to the fact that, A, those whole range of questions that had nothing to do with any employment relationship between the parties, as you earlier indicated, was not within the contemplation of the parties? And then, B, what is the significance, you think, of the reference to partner as the description of who the agreement is between? Because I noticed in your brief, although the agreement itself says it's any dispute or claim arising between the partner and New York Life, you refer to it consistently as if it's an agreement between Mr. Bosse and New York Life, which I think is rather different. Well, the partner is really used in the agreement as a definitional term, Your Honor. It is a way of describing Mr. Bosse. Why do you say that? One way of understanding it might be that what it is a way of describing is his status, so any claim arising out of that status between the two would be subject to the delegation clause, but not necessarily anything relating to him independent of that status. I'm sorry, I'm not sure what that last point, I just didn't understand the last part of your question. I'm turning to the contract for a moment. I have the status of being a judge right now, but I also have personal status. Mr. Bosse had the status of being a partner and also had an independent personal status. One could read the agreement to say that any claim arising out of his status vis-a-vis New York Life would be subject to the agreement, but not any claim relating to him outside. We're not hearing him. Sorry, Your Honor, you dropped out. That wouldn't be a plausible construction. I'm sorry, Judge Barron. It would exclude the trouble. You can't hear me? Yeah, we lost you for most of that question. I'm sorry. Let me see if I can drop out for a second. Sure. Would IT stop the stream for one second while we try to make an adjustment? Good to go? Okay, so sorry about that, Mr. Banks. I guess the question is just, like, I have a status as a judge right now. I also have a personal status. Mr. Bosse had the status of being a partner. He also had the personal status. Since the contract says partner and any claim arising between the partner and New York Life, why wouldn't it be plausible to construe that as any claim arising out of that status vis-a-vis New York Life rather than any claim arising out of the fact that Mr. Bosse was involved independent of him being a partner? Well, Judge Barron, that is certainly an argument that Mr. Bosse can make and perhaps would be plausible if he makes it to an arbitrator who has been delegated a question. But if that's right, I guess we have the question of the scope of the delegation clause. And the scope of the delegation clause turns on exactly this interpretive issue. There is no delegation if the claim at issue is not within that clause, the delegation clause itself. And the delegation clause refers to such claims. So it's the exact same question. If we turn to the agreement containing the arbitration clause, which appears at Joint Appendix page 72, you see that it is a form type of agreement that New York Life uses with all of its partners. At the top, it says partner and then the name Kettler-Bosse. And then in the rest of the agreement, because it's a form agreement, rather than retyping Mr. Bosse's name throughout and having customized agreements for each individual, it just uses the short form term of partner. We often see this in employment agreements where an agreement will refer to an individual as employee or executive. But I thought you just said it was plausible to construe it the way I would suggest. Well, he could make that argument to an arbitrator, but there's also a reading of this contract that that is merely a definitional term. I submit that is the correct reading, that it is a definitional term. And the survival clause, Your Honor, would be inconsistent. The combination of the survival clause. I just think that because I didn't follow that argument, even if this was limited only to the types of claims I was just describing, the survival clause would still have meaning because any claim about the partnership status that arose after he left his partnership would still be subject to arbitration because of the survival clause. So the survival clause doesn't bear on the question of the scope of the substance of the agreement. But Your Honor, if we go to the language of the arbitration clause, it says the partner and New York Life agree that any dispute claim or controversy arising between them will be arbitrated. It does not say it is limited to disputes between Mr. Bosset and New York Life that he might assert while a partner. It just describes him as the partner, the individual. That's the ambiguity that I'm that I'm raising, and I'm not seeing why that doesn't make sense to read it nearly because it takes care of what you say couldn't have been within the contemplation of the parties, which would be something wholly unrelated to the partnership agreement at all. Well, it claims unrelated to the partnership agreement are subject to compulsory arbitration. The question I believe that Your Honor is raising, Judge Barron, is who is bound by this? Is it Mr. Bosset? Is it Mr. Bosset limited to his capacity as a partner? I respectfully submit that it would strain the agreement considerably to say this is limited to a partner relationship, especially in light of the Marquez Declaration. We submitted a declaration. Mr. Bosset did not submit any evidence in response to our motion to compel, in which Mr. Marquez explained the way these arbitration provisions work typically, but also how common it is for individuals to move between positions. This is something we see in the employment context all the time where you might have a contract, if you were employed by a company as a vice president of finance and you moved into vice president of sales. The contract might refer to you as the executive or the vice president, but that's a definitional term, and if there is survival language, what the courts have recognized, is that goes beyond that contract when you move into a different position. There's nothing in this agreement that uses the phrase, the partner, in any sense other than a short form version of referring to Mr. Bosset as opposed to a limitation on his position. There's nothing in the agreement that suggests it means to encompass... I'm sorry, I can't hear, Dan. Dan, did you say something? Sorry. That's Judge Barron. Judge Barron, could you repeat that? I'm sorry. I think my... Can you hear me now? Yes. I guess what I'm still puzzled by is we have got two different issues that I wanted to separate, but what's puzzling me is what in the agreement makes it clear that the claims that are being unrelated to his partnership relationship to New York Life? Well, it's the phrase, any dispute, claim, or controversy arising between them. That says any dispute, anything, any subject matter. But the them is referring to the partner in New York Life. That's what I'm trying to get at. What in the agreement tells me to read it narrowly that way? Them refers to two parties. It refers to the person who is the partner, Mr. Bosset, and New York Life. If instead of them, it had said any dispute, claim, or controversy between Mr. Bosset and New York Life, of course, we wouldn't be having this discussion. But partner is just a way in this agreement of referring to Mr. Bosset. So if you take them as a preposition and say, what does them mean in this agreement? That's not very grammatically sound. What does them mean? But them means Mr. Bosset and New York Life. That's at least to me the most logical interpretation of this agreement. Mr. Banks, I do not recall Mr. Bosset making this argument at any point to the district court that the term partner referred merely to his status as a partner and was not a shorthand way of referring to him, Mr. Bosset. Is my memory correct on this? Your memory is correct, Your Honor. That argument was not made. Therefore, you did not make that argument here to the contrary either. I believe it's being made by Judge Lynch. I'm sorry. If it wasn't made until oral argument, I believe Mr. Banks gets a chance to respond to it. But I believe Judge Barron had a second question that he wanted to ask. Yes, Judge Barron. Judge Swearer, did you have a question? No, I didn't. Okay. On the second question, just on the point about partner, I guess I had read Mr. Bosset's brief because he underlines partner consistently and distinguishes it between partner and employee to be making exactly this argument. But if you say he didn't raise it in the district court, we can ask him about that. On the second question, here's the puzzle for me. We have an arbitration clause and a question about its scope. We have a delegation clause and a question about its scope. Clearly, when there is a delegation clause, questions about the scope of the arbitration clause are for the arbitrator. But in those cases, typically, there's no question about the scope of the delegation clause. Here, there is a question about the scope of the delegation clause and it happens to mirror exactly the question about the scope of the arbitration clause because they each are referring to the exact same thing, claim and such claim. So could you just help me? That's a generalizable point. I understand that there's an important fight the two of you are having about what this thing means and whether it applies to partnership status or not. But this other point is a generalizable important point for how we think about arbitration and arbitration clauses generally. Could you help me think through how to resolve that? Because the irony is if we decide it's clear, clearly within the delegation clause, of course, that decides the scope of the arbitration clause itself, which is presumably what the delegation clause exists to keep us from deciding. So I'm just a little puzzled how to about unscrambling this. Your Honor, I'll do my best to answer, but I don't believe that there is a question about the delegation clause. The delegation clause could not be more specific. It says that any dispute as to whether such claim is arbitrable shall be resolved by an arbitration proceeding and incorporates the rules. The ambiguity is what is a claim. That's very Let's say it's delegated to the arbitrator. What's going to be the fight for the arbitrator? Well, what was within the scope of the arbitration clause? That's going to be a fight about the meaning of clarity is in the delegation clause because it defines the delegation as tethered to such claim. So what are we supposed to do in that instance? Well, such claim as used in Section 5A of the agreement defining the obligation to arbitrate refers back to any dispute, claim or controversy between them, and that which it then says here and after the claim. So the language is so broad as to encompass any dispute, claim or controversy. Then capital C claim is a reference back to the broadest possible description of any dispute, claim or controversy. It is then such capital C claim, any dispute, claim or controversy that must be sent to the arbitrator under the delegation clause. I definitely agree if it is clear what claim means, then it's clear both in the arbitration clause and clear in the delegation clause. My claim is a I'm sorry, your honor. Go ahead. Claim is a defined term. It's a capital C claim, and the term is defined as any dispute, claim or controversy arising between them, including those alleging employment discrimination, including sexual harassment and age and race discrimination, violation of the statute. The ambiguity is whether that includes even the hypothetical judge to a way it gave you. And if there is an ambiguity on that point in light of the text, maybe there's an ambiguity whether it encompasses anything outside the partnership agreement itself. That's the issue. Understood. And that's I think I understand. And that's why I said I don't believe it is ambiguous. It does cover the car accident. It does cover the personal injury claim. It says any dispute, claim or controversy. And there's no basis to carve that out. If we had such a matter, which we don't, Mr. Bosset could argue to the arbitrator, I believe, without foundation that such personal injury matter is excluded. But I think the language here is broad enough to include that. And I think it's logical that it would be broad enough to include that employers and companies developing arbitration agreements try to make these comprehensive for, I think, obvious reasons. No one wants a manager or an executive or a partner to be in. I shouldn't say no one may not want a partner to be in litigation with them over any matter, whether it's employment, fringe benefits, a car accident, allocation of pensions to a relationship. And anything that grows out of that relationship between us should be in arbitration. And that's what this agreement does. And I would note, Your Honor, since we completed our substantive briefing, there have been quite a number of cases adopting every appellate court must follow Henry Schein. But the Henry Schein decision has been followed by at least eight different federal appellate decisions in every instance, finding that where there is an express delegation clause, as there is here, that the question of what is arbitrable goes to the arbitrator. There is no ability to revive the holy groundless argument that Henry Schein rejected and that this district court resuscitated in a manner by saying it believed the scope of this arbitration clause was certain. This is my last question on this point. But the thing, this is the generalizable point. As I read all those cases, none of them involve disputes about the scope of the delegation clause. So do you have any insight for us as if we thought that there was an ambiguity as to scope, whether we're supposed to apply a presumption in favor of finding the delegation clause to cover it, whether we're supposed to apply a presumption against finding because it's not clear and unmistakable, or whether we apply no presumption at all? And if you do have a view, is there some reason why one presumption makes more sense than the other? I don't know whether there is any discussion in the cases of presumption, and it would be presumptuous of me to tell the court that we should presume anything. I believe the phrase that Your Honor just asked about, clear and unmistakable, is the question. Is there a clear and unmistakable delegation? This district court said that there was a clear and unambiguous delegation clause. The court did not question that. What the court below did was intrude upon the scope question that is reserved for the arbitrator. I think this language saying that any dispute or claim must be sent to arbitration to determine scope or arbitrability could not be more clear and unambiguous, and the district court did not disagree with that. Where the district court went after that was to talk about what claims are arbitrable, i.e., what is the scope of the arbitration clause, and that is where the court erred. It conflated scope with the fundamental question of whether there is a binding arbitration agreement. Here, there is no dispute that there is a binding arbitration agreement, and likewise, there is no dispute that the question of arbitrability is delegated to the arbitrator. I notice, by the way, I am well over my time. I hope to keep my two minutes for rebuttal, and I'm mindful of the court's clock, so there are a few other points that I would make, but if the court wants to hold me to the clock, I don't want to be presumptive. I think you should be held to the clock. Partly, our questions have extended the time, so we won't take any time from your two minutes. Okay, thank you. And the last point I would then make just before I... No, please. Oh, I'm sorry. We will hold you to the time now, and you have two more minutes. Oh, okay. Thank you. I'm sorry, I have... Thank you, Mr. Banks. If you could mute your audio and video at this time, and we will unmute. Attorney Foho, please unmute your audio and video. Before you begin, Mr. Foho, Judge Barron, have you been able to hear everything that we've been saying? Yeah. I find that he's coming in kind of off and on. I'm sure it's my internet, Juan. I think that's all I can think that it is. Shall we continue, judges? We are live still. Go ahead, but I just thought I'd mention that. Thank you. Mr. Foho, good morning. You may go ahead. Good morning. May it please the court, my name is Robert Foho, and I represent the IAPA League, Kettler-Bosset. Before I begin, I would like to reserve two minutes for rebuttal if the court would grant me that. We don't usually... Excuse me. We don't usually allow that for only the... Just as a precautionary measure. Not a problem. Thank you. A lot of the concern that I've listened to concerning the arbitrability issue, I don't believe that the court even needs to arrive at that question. The issue here begins and ends with the scope of the arbitration clause itself. And it comes down to the language in the Federal Arbitration Act that this court requests the parties to focus on in their supplemental briefing. And that language, it's the arising out of such contract or transaction. That language in the act would not be there if it didn't mean something. And what it does is it conditions the enforcement of an arbitration clause in a contract on there being, as a district court concluded, some connection with the agreement or contract. So the FAA explicitly limits itself to agreements to settle by arbitration, a controversy that arises out of a contract or transaction. Counsel, if I might, there are a lot of questions to be asked in this case. It's a reading of this to the survival clause. Aren't you essentially reading it out of the contract? Not at all, Your Honor. The survival clause is there. It's valid. But again, the agreement, the dispute still needs to arise out of the agreement and the relationship contemplated by that agreement. It is an employment relationship. Mr. Bosay was an employee under that agreement, whereas under the latter two agreements, the agent's contract and the district agent agreement, he was an independent contractor. Counsel, even as an independent contractor, the claims he's asserting are employment discrimination in violation of a statute. And that's further defined as including race discrimination claims. That's a very good question. And the clarification that I need to emphasize with that is that those claims are based on facts and events that occurred when he had a completely different role with the company. When he was exercising a far more with the company, when he was earning a very different type of compensation with the company over a decade after the partner's agreement was terminated. So those claims are based on a completely different fact pattern that had nothing to do with his role, his duties and responsibilities under the 10-year, the decade of employment agreement that was terminated. Well, that brings me back to the survival clause because there is nothing in the agreement that facts that arose as of the time of either the partnership agreement or an employment agreement. In fact, the survival clause says claims survive. And we're just trying to parse through this. I understand. And I agree that it is a very complicated layering of questions. The survival clause, there's nothing wrong with the survival clause, but the arbitration clause still has to apply to the dispute. The dispute and the claims that result from that dispute still has to arise out of the contract itself. I see if I can understand what you're saying. You tell me if this is right. Sure. Suppose Mr. Bose finds 10 years after he's left his partnership role that he was cheated out of a certain amount of payment that he believes he was owed as a partner. Sure. Your view would be that claim, because it relates to a claim about what he was owed as a partner, would still be subject to arbitration, even though it's arising 10 years later. And that would be because of the survival clause, correct? That is correct. For example, correct. But your position is that if instead what he's saying is in a new role, not as a partner, I now have a dispute with New York Life in which I was discriminated against based on race, not as a partner, but as an independent contractor for which I had no agreement. That is not covered by the partnership agreement. I'm sorry, Judge Barron, we're actually not able to hear you. You better repeat that, Judge Barron, because nothing was heard. I missed the second half of that, but I believe I know where you're getting at, but I, Judge Barron, please, yes, if you can just repeat it. It's just so clear. Okay. I now think I understand your position as the survival clause as to the first type of claim. As the second type of claim, if the dispute is about race discrimination that occurred only when he was an independent contractor or independent agent, no longer a partner, your position is that is not subject to arbitration, not because the survival clause doesn't have force, but because it's not within the scope of the agreement that he forged as a partner at all. So it just doesn't fall within the terms of the arbitration agreement. Is that the idea? That is correct, Judge Barron. In fact, and I'll take it one step further. He had a far different set of responsibilities and duties under the agent's contract and the district agent agreement. So many of the claims that he has raised in the complaint could not have been raised if he'd had the much more limited relationship and role with New York Life that he had under the partner's agreement. A lot of the claims, for example, regarding his compensation, he was paid on commission under the agent's contract and the district agent agreement. Years later, he was paid a salary under the partner's employment agreement. Counsel, I'm not understanding that because whether the scope of the compensation is different from the issue about whether the differential treatment is motivated by race or in violation of the section 1981 prohibition of race being used to treat contractual relationships differently. So I do, frankly, I don't understand why claims of race discrimination cannot be brought against someone who is a partner of New York Life. It may be the measure of damages is different. It may be the measure of harm is different, but the basic causation question is the same. Well, the key point I think that I need to identify is that he was not a partner when the racism that we claim occurred actually happened. He was operating under a different set of responsibilities, a different set of terms and conditions. And if you look at the those cases concern a situation where a party tried to compel arbitration, the court denied the motion because the parties were operating under different terms and conditions. And the prior arrangement that contained the arbitration clause was no longer the operative relationship that the parties were operating under. And that's, I think, the key point that needs to be made here. When Mr. Busse was operating as a district agent, first as a district agent, he was not a partner. He was not a partner. He was not the equivalent of Busse. It struck me as different than the argument you made that an independent contractor or an employee relationship was different from partner. Did you, before the district court, make the precise claim that the term partner was not the equivalent of a reference to Busse? Well, without looking directly at the papers we filed below, I don't believe we made that argument or that we were trying to make that specific point. Rather, the argument we were making is what I've been reciting a few times here is that the relationship and his duties and responsibilities under the partners agreement was very different than the role that he had the latter two agreements years later. There's a problem with, I understand the substance of your argument, but you need to explain how the text of the agreement supports or accommodates or permits us to endorse the substance of your argument. So what in the text of the agreement accords with what you're saying? And just to make it sharper, what your opponent says is, it says, does any claim arising between, so what in that text would comport supports that? I thought that in your brief, when you underlined the word partner consistently, was a way of saying the text supports you, but you're saying you didn't make that argument below. Forgive me. I judge Baron. I missed part of your question. Again, same thing has happened before. If I could ask you to repeat that, the question that would help me answer it. I'll try again. I'm sorry. I don't know if I, can you hear me now? I can hear you now. Yes. Well, I understand the substance of your contention about what the agreement encompassed, but it was reduced to a form of words. And so you need to make an argument as to how the words that were used comport with your contention about what it means. And since the words include any dispute, I guess I'm struggling to see what you say is in the contracts text that supports your position. If you're not saying that the word partner itself does that. Because you have to, the contract is interpreted by New York law. Under New York law, the courts hold that you need to look at the agreement as a whole. The agreement as a whole, this is an employment relationship. About five minutes left. Thank you. This is an employment relationship. The agreement is a very, it specifies a very claims that would result from such disputes that arise under this agreement relate to that employment relationship. That is how I would answer that concern that you're posing. You need to look at the whole, not just at that one specific word to try to resolve the dilemma that you're posing. Counsel, it appears that the FAA does have, we all agree, the arising out of language, but that the New York Arbitration Act does not. And if you refer to the New York Arbitration Act as setting the expectations of the parties, doesn't that work against your argument? I wasn't referring to the New York Arbitration Act. I was referring to the rules of construction that New York substantive New York law. Okay. Well, I'll freely admit that my question was not motivated by any argument your opponent makes. I don't expect you to go any further on that. Okay. Thank you. Let's go back to my notes here real quick. I guess the bottom line here is if you resolve whether or not the arbitration clause actually applies to this dispute, that should be the end of the matter. And that's how the district court resolve this. Well, can I ask you about, because Mr. Banks raised a fair point, which is since we have a delegation clause, typically we don't jump right to the arbitration clause when there is a delegation clause because we say the meaning of the arbitration clause has been delegated to the arbitrator. So don't we have to start with the delegation clause and its scope? Now, it may be that that just refers us back to the arbitration clause because of the phrase claim, but I don't see how we can start with the arbitration clause and not start with the delegation clause. Since there's no doubt there is a delegation clause, the only question is potentially as to its scope. You still need to determine whether or not the parties agreed to have this agreement apply to this dispute. Inevitably, you end up back at square one in one resolve to the other. Let me just test this. You're saying that Harry Schein and all of those cases about looking for a clear and unmistakable delegation clause are offset by some section two of the FAA, and there is an independent power in section two of the FAA that resides in the reviewing judge faced with a motion to compel arbitration? That is correct. Yeah, that is the logic of your position. Right. It must be connected to the agreement in some way or another, and we contend that the claims that Mr. Busse has raised here have no connection whatsoever to the partner's agreement. Rather, they're connected to the latter two agreements under which he was operating during that period of time and to that general relationship that he had, first as a soliciting agent and then a district agent overall as an independent contractor. What do you say to the question that Harry Schein does not contain, one and two, do not contain any carve out under section two of the FAA? Well, there's a lot of confusion here about Henry Schein. We need to emphasize that. We need to delegated the arbitrability question to an arbitrator. The court express no view on that at all. The court held only that when the party's contract delegates the question, the arbitrability question to an arbitrator, the courts have to respect that and cannot rely on this wholly groundless exception that was bandied about in that case. But again, it still goes back to is there clear and unmistakable evidence that the parties agreed to bring this dispute within the scope of the arbitration clause, agreed to delegate that question to the arbitrator? You still have to wrestle with that question and resolve that first. Does this agreement actually apply to this dispute? We contend it does not. That should be the end of the matter. That's the time. Thank you. Thank you, counsel. I believe we have two minutes of rebuttal from Attorney Banks. Attorney Foho, if you could please mute your audio and video and Attorney Banks, you can proceed. Thank you. I would like to address the arising out of contract or transaction argument and Mr. Foho's comment that the claim must be connected to the agreement. It's wrong in two respects. First, the arbitration agreement is a contract in and of itself. The Supreme Court, in both the Renta Center and Prima Paint cases that we cite in our brief, make that quite clear that the Section 2 of the Federal Arbitration Act requirement is met because the arbitration obligations in and of themselves. Parties can agree to arbitrate disputes without any other substance in a contract. I, if I were an employer, could hire an individual and say, I hereby offer you employment starting tomorrow. We agree that all disputes between us are subject to compulsory arbitration. Nothing else. Our disputes then about statutory or other claims would be subject to compulsory arbitration and that claim would arise out of the contract within Section 2 of the FAA. That's the Renta Center case. Second, the notion that claims must arise from the other substantive or operative provisions of the agreement is belied by the Supreme Court's decision in the Shearson v. McMahon case as well as the Gilmer v. Interstate Brands case. Those cases make it quite clear that statutory claims, which do not arise out of the other terms and conditions of the relationship, can be subject to compulsory arbitration when there is a broad provision like the one we have here saying that all claims, disputes, or controversies are subject to compulsory arbitration. And if the Court has no other Mr. Banks, the district agent contract created an independent contractor relationship, did it not? It did, yes, your honor. With everything in that is completely, well, not everything, but it creates a completely different situation than existed when he was an employee. It is a different relationship. It is subject to the laws pertaining to race discrimination, specifically 42 U.S.C. 1981, under which Mr. Bosset is litigating, but the terms are different. It's a different kind of relationship from the partner relationship. It's an ongoing relationship, but different in its terms. All right, that's all I wanted to ask. Yes, just as moving within employment positions could involve different terms. That's different because now he's not an employee. He's an independent contractor. In fact, that was your position before the New Hampshire... That's right, but differences in terms don't take away the arbitration. In other words, I might pay an employee a salary in one position, and then he might move into a commission job, and that commission employment-related job might give rise to disagreements about commission entitlements that are never covered by the original agreement. Nevertheless, the arbitration clause, if it survives the original expiration... That is the big if. Yes, and that's what it says here, that it survives regardless of relationship. It survives this contract. Is it the standard form that independent contractors do not sign an arbitration clause? Namely, is that the standard practice at New York Life? No, it's actually not. Many of New York Life's established agent contracts contain... Well, I shouldn't say that. I don't want to speculate, Your Honor. I'd be going outside the record and speculating. I don't know whether all agent contracts have arbitration provisions. I know some do, but the district agent... There's nothing in the record that informs us about that. Is that right? I think that's right, and that's why I want to be careful here about not introducing something beyond the record and risking speculating. Thank you. Unless the court has further questions, I know that my two minutes are up. I appreciate the opportunity to appear, to be seated unusually, and to participate by video. Thank you, counsel. Thank you, Your Honors. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.